IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RICHARD ALLEN CREAGER, JR.
d/b/a FREDERICK ARSENAL
    *Petitioner*,

    v.

BUREAU OF ALCOHOL,
TOBACCO, FIREARMS, AND
EXPLOSIVES, *et al.*
    *Respondents*.

Civil Action No. ELH-15-1518

## MEMORANDUM OPINION

In this case, petitioner Richard Allen Creager, Jr. d/b/a Frederick Arsenal ("Creager"), seeks judicial review of the decision of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), which revoked Creager's federal firearms manufacturer's license.  ECF 1. He relies on 27 C.F.R. 478.78 and 18 U.S.C. 923(f)(3).  ECF 1 at 2.

The parties have filed cross-motions for summary judgment, based on the administrative record.  The motions have been fully briefed, and no hearing is necessary to resolve them.  *See* Local Rule 105.6.  For the reasons that follow, I will grant ATF's motion (ECF 7) and deny petitioner's motion (ECF 11).

## I.    Procedural Background

Creager, who is self-represented, filed suit in this Court on May 27, 2015, against the following respondent(s):[1]

> Bureau of Alcohol, Tobacco, Firearms and Explosives
> Nicholas E. O'Leary, Acting Director of Industry
> Operations, Baltimore Field Office

---

[1] The Court is mindful that pleadings filed by a self-represented plaintiff are to be liberally construed.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  Nevertheless, as discussed, *infra*, it is not entirely clear whether petitioner sued both ATF and O'Leary, or whether he included O'Leary merely for purposes of service on ATF.

31 Hopkins Plaza 5th Floor
Baltimore, Maryland 21201

Service of the suit was executed upon O'Leary on July 22, 2015, and upon the U.S. Attorney for the District of Maryland on August 17, 2015.  ECF 5.

On October 16, 2015, "Respondent" moved to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 56 (ECF 7), supported by a memorandum (ECF 7-1) (collectively, "Defense Motion").   Respondent also submitted the administrative record (ECF 6),[2] including the transcript of an administrative hearing held on November 19, 2014 (ECF 6-1), and other exhibits.  The defense contends that the Complaint was untimely filed.  ECF 7-1 at 5.  Alternatively, the defense maintains that the license revocation is justified because petitioner "knew and understood the record keeping requirements of the Gun Control Act of 1968 ('GCA'), but, nevertheless failed to record the acquisition and disposition of more than one thousand firearms."  ECF 7-1 at 2.

Petitioner did not file an opposition to the Defense Motion.  Instead, on November 9, 2015, he moved to dismiss, or in the alternative, for summary judgment.  ECF 11, "Petitioner's Motion."  Creager alleges that the Defense Motion should be denied because it was untimely filed, given that O'Leary was served on July 22, 2015.  ECF 11 at 1.  Petitioner states: "Pursuant to Federal Rule of Civil Procedure 12(a)(2) a motion for summary judgement in favor of Petitioner should be granted as *The Defendant, Nicholas E. O'Leary and the United States attorney* did not respond to the complaint within . . . 60 days after service. . . ." ECF 11 at 2 (emphasis added).

_____

[2] The pagination provided in the electronically docketed administrative record does not correspond with the page numbers for the documents in ECF 6.  Citations in this Memorandum Opinion will refer to the page numbers as they appear electronically.

The defense filed an opposition to Petitioner's Motion on November 20, 2015 (ECF 12, "Opposition"), contending that, pursuant to Fed. R. Civ. P. 12(a)(2) and Fed. R. Civ. P. 6(d), the Defense Motion was filed within 60 days of service on the U.S. Attorney, effected on August 17, 2015. ECF 12 at 2. The Opposition does not address the effect of service on O'Leary on July 22, 2015. ECF 12.

As a preliminary matter, it is difficult to decipher from the Complaint whether petitioner intended to file suit against O'Leary, the ATF, or both. ECF 1. As indicated, O'Leary's name appears directly under the ATF, along with a single physical address. Petitioner's Civil Cover Sheet (ECF 1-2 at 1) and his single proposed summons (ECF 1-2) include the same naming convention that appears on the Complaint. In the Notice of Filing of Administrative Record, the defense identified O'Leary as the sole Respondent. *See* ECF 6 at 1. And, as indicated, the Defense Motion (ECF 7) refers to a single, unidentified "Respondent."

Given petitioner's lack of clarity as to whether he sued both ATF and O'Leary, and the defense's corresponding lack of clarity as to the identity of the respondent, I requested supplemental briefing from the defense to "explain why its submissions refer to a single respondent" and to "identify that respondent." ECF 13 at 2. In addition, I asked defense counsel to provide "authority explaining its position that the time to respond to the suit was properly calculated from the date of service on the U.S. Attorney, rather than the date of service on O'Leary." *Id.*

On January 27, 2016, the defense submitted supplemental briefing addressing these issues. ECF 14, "Supplement." The Supplement states: "Given the fact that Plaintiff's Complaint entails a judicial determination of an agency action, and makes no individual capacity allegations against Mr. O'Leary, the defense interpreted this lawsuit as one against [the ATF]."

ECF 14 at 1.   The Supplement does not explain why, in filing the Administrative Record, O'Leary was identified as the sole respondent.   Additionally, citing Fed. R. Civ. P. 12(a)(3), the Supplement states: "Even assuming, however, that Plaintiff sued Mr. O'Leary in his official capacity . . . the Motion is still timely because the time to respond would not have started until the date of service on the United States attorney."   *Id.* at 2.   Petitioner has not challenged the assertions of ATF in the Supplement.

As the defense points out, there are no allegations in the Complaint as to O'Leary's conduct.   This supports the view that O'Leary's name was listed on the Complaint merely because of his position as Acting Director, and not because petitioner intended to sue him. Therefore, I shall construe the Complaint as a suit only against the ATF.

As to the timeliness of the ATF's response to the suit, Fed. Civ. P. 12(a)(2) is pertinent.   It states, in part:

> The United States, a United States agency, or a United States officer or employee . . . must serve an answer to a complaint . . . within 60 days after service on the United States attorney.

The U.S. Attorney was served on August 17, 2015.   ECF 5.   Therefore, ATF's filing on October 16, 2015, was timely.

Even if Creager has sued O'Leary, the response is timely.   Fed. R. Civ. P. 12(a)(3) is relevant.   It provides (emphasis added):

> A United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf must serve an answer to a complaint, counterclaim, or crossclaim within 60 days after service on the officer or employee or service on the United States attorney, *whichever is later*.

As noted, Creager served the U.S. Attorney after serving O'Leary.  Therefore, under Rule 12(a)(3), the 60-day response deadline began to run on August 17, 2015.  It follows that the Defense Motion was timely filed on October 16, 2015.  ECF 7.

## II.  Regulatory Framework

The requirements set forth in 27 C.F.R. §§ 478.125(e), 478.125(i), and 478.123 are pertinent.  Section 478.125(e) provides record-keeping requirements for licensed firearms dealers, and § 478.125(i) adopts the same requirements for licensed manufacturers.  Section 478.125(e) states:

> Each licensed dealer shall enter into a record each receipt and disposition of firearms. In addition, before commencing or continuing a firearms business, each licensed dealer shall inventory the firearms possessed for such business and shall record same in the record required by this paragraph.  The record required by this paragraph shall be maintained in bound form . . . .The purchase or other acquisition of a firearm shall . . . be recorded not later than the close of the next business day following the date of such purchase or acquisition. The record shall show the date of receipt, the name and address or the name and license number of the person from whom received, the name of the manufacturer and importer (if any), the model, serial number, type, and the caliber or gauge of the firearm. The sale or other disposition of a firearm shall be recorded by the licensed dealer not later than 7 days following the date of such transaction. . . . When such disposition is made to a licensee, the commercial record of the transaction shall be retained, until the transaction is recorded, separate from other commercial documents maintained by the licensed dealer, and be readily available for inspection. . . .

The regulation goes on to provide an example of the format for keeping records.  *See* 27 C.F.R. § 478.125(e).  Additionally, as to firearms manufacturers, 27 C.F.R. § 478.123(a) states:

> Each licensed manufacturer shall record the type, model, caliber or gauge, and serial number of each complete firearm manufactured or otherwise acquired, and the date such manufacture or other acquisition was made. The information required by this paragraph shall be recorded not later than the seventh day following the date such manufacture or other acquisition was made.

And, "records pertaining to firearms transactions . . . shall be retained on the licensed premises . . . " (*id.* § 478.121(a)), unless particular conditions for keeping electronic records are

met.  *See* ECF 7-1 at 12 n.4 (citing ATF RULING, 2013-5 (Dec. 17, 2013), which permits electronic recordkeeping subject to several conditions, including that a "licensee must print or download all records from the system . . . upon request of an ATF officer (must be provided within 24 hours)" (*id.* at 4) and that "records are readily accessible through a computer device at the licensed premises during regular business hours" (*id.* at 5)).

### III. Factual Background[3]

On June 23, 2014, the ATF sent Creager a Notice of Revocation of License, based on events that occurred in early 2013.  ECF 6-2 at 2–4, "Notice."  The Notice explained, *inter alia*, that Creager "failed to make appropriate entries in, or failed to properly maintain" his Acquisition and Disposition Book ("A & D Book").  ECF 6-2 at 3.  Creager was also notified of his right to request a hearing with ATF to review the revocation within 15 days.  *Id.* at 2.  By letter dated June 30, 2014, Creager requested a hearing, noting that he had "several questions" regarding the "basis of revocation."  *Id.* at 5.  A Notice of Hearing was sent to Creager on October 3, 2014, which culminated in an evidentiary hearing on November 19, 2014.  ECF 6-2 at 8–9. *See generally* ECF 6-4 (Report of ATF Hearing Officer Ronald L. Johnson).  A summary of the evidence adduced at the Hearing follows.

Creager's business, the Frederick Arsenal, is located in Frederick, Maryland.  Creager became a licensed firearms dealer in 1990.  ECF 6-1 at 18–19; ECF 6-2 at 10.  Creager held that license until May 7, 2013, when he voluntarily surrendered it.[4]  ECF 7-1 at 3; *see also* ECF 6-1

---

[3]   The Factual Background is derived largely from the Administrative Record (ECF 6), including the transcript of the Administrative Hearing (ECF 6-1, "Hearing") held on November 19, 2014.

[4] According to the defense, Creager surrendered his dealer's license "to avoid revocation proceedings on both licenses.[]"  ECF 7-1 at 3, Defense Motion.  Petitioner does not contest this allegation.  *See* ECF 11.  However, at the Hearing, Creager objected to "the government's inclusion of the dealer's license."  ECF 6-1 at 76.  The defense contended that "the thousands of

at 64.   However, in early 2013, at the time of the ATF inspection, Creager held both a dealer's license and a manufacturer's license.

Creager obtained a firearms manufacturer's license in 2000.   ECF 6-2 at 10–11 (License Registration Reports).   Between 2000 and 2013, Creager was subject to three ATF inspections in connection with his manufacturer's license.   ECF 6-1, Testimony of Nina Regert, at 22-23.

Nina Regert was employed by ATF as an Industry Operations Investigator for thirteen years.   ECF 6-1 at 13–14.   As of the time of the Hearing on November 19, 2014, she had conducted "over 200 application inspections" and "over 200 compliance inspections" for the ATF.   *Id.* at 15.   Regert testified that an initial inspection occurred in 2000 for Creager's manufacturer's license application process, and compliance inspections took place in 2009 and 2013.   *Id.* at 22.   It is the 2013 inspection that culminated in the revocation of Creager's manufacturer's license.

Regert testified that during the 2000 inspection, Creager received information as to the applicable laws and regulations, and also signed documents acknowledging that the "pertinent laws and regulations were reviewed with him, and he has an understanding of his obligations . . . ."   ECF 6-1 at 24, Regert; *see also id.* at 24–26.   Similarly, in 2009 Creager went through the same review process (ECF 6-1 at 25) and acknowledged that he received and reviewed the rules and regulations and understood his obligations.   *Id.* at 25–26.   According to Regert, ECF 6-1 at 25–26, by signing the regulation forms during inspections, Creager was "acknowledging" that the "rules and regulations were reviewed with him, and he understands his obligation."

---

violations associated with [the dealer's] license [were] relevant to proving that the GCA violations on [Creager's] manufacturer's license were willful."   ECF 7-1 at 3 n.3, Defense Motion (alterations added); *see* ECF 6-1 at 11, Hearing.

- 7 -

The Administrative Record includes a "Review of Federal Firearms Regulations" form signed by Creager on August 28, 2000. ECF 6-2 at 13. It also includes an "Acknowledgement of Federal Firearms Regulations" signed by Creager on May 19, 2009. ECF 6-2 at 14–15. And, at the Hearing, Creager answered affirmatively when asked if he agreed that by signing inspection forms in 2000 and 2009 he was "acknowledging that the ATF investigator had explained the regulations" and that he "understood them[.]" ECF 6-1, Creager, at 93.

The regulations that Creager received outline recordkeeping obligations that require a licensee "to record all firearms they acquire and all firearms they dispose of" in an Acquisition and Disposition Book. ECF 6-1 at 21, Regert; ECF 6-2 at 12. A & D Books are used to "track the movement of firearms," such as when firearms are "recovered by law enforcement officials . . . ." ECF 6-1 at 27, Regert.

At the Hearing, Creager was asked: "[I]s it fair to say that you understand your requirement to enter an acquisition and a disposition in the bound book within the required time limit?" ECF 6-1 at 90. Creager responded: "Yes." *Id.*

Regert indicated that she found no discrepancies or violations in Creager's recordkeeping through 2009. ECF 6-1 at 26; *see also* ECF 6-2 at 12 (ATF notice of compliance for 1/1/95 to 10/23/96 for petitioner's dealer's license). The third inspection, which led to the license revocation, began on January 27, 2013, after a firearms theft was reported at Creager's business. ECF 6-1 at 15, Regert.

Gary Griffin, an ATF Industry Operations Investigator for more than 22 years, was initially assigned to the matter. ECF 6-1, Griffin Testimony, at 32. Regert stated that Griffin requested her assistance. ECF 6-1 at 16, Regert. According to Regert, when Griffin reported to

Creager's business in 2013, he "noticed there were no acquisition and disposition records on the premises . . . ." ECF 6-1 at 16, Regert.

Regert recalled that, prior to conducting the inspection in 2013, she obtained Creager's National Firearm Registration and Transfer Record. ECF 6-1 at 16. She explained that the National Firearms Act ("NFA") requires licensees to register firearms they possess; these registrations are compiled in National Firearm Registration and Transfer Records ("NFRTR"). ECF 6-1 at 17, Regert. According to Regert, it is a "document showing what's currently in [a] license holder's inventory [and] what is currently registered to him." *Id.* Creager had a NFRTR because he "holds a special occupational tax stamp to engage in the business of national firearms. . . ." When Creager's NFRTR was obtained by Regert in 2013, it "revealed that [Creager] was currently active in manufacturing and acquiring NFA firearms." *Id.*

Regert recounted that she spent February 5 and February 8, 2013, on the premises of Creager's business, conducting an inspection. *Id.* at 16. During this time, Regert found that Creager's A & D book "for the manufacturer's license . . . revealed that the last recorded entry was on August 10th, 2011." *Id.* at 28. It was later determined that "the last recorded entry in the dealer's record was December 31st, 2009." *Id.* at 29; *see also* ECF 6-2 at 52 (including a photograph of the A & D book with the last entry on 12/31/09). However, it was clear, based on other records, that firearms transactions were "being conducted up until the very day [ATF investigators] got there." ECF 6-1 at 29, Regert. Indeed, the Administrative Record includes several ATF transaction records documenting transactions that occurred after August 10, 2011, under Creager's manufacturer's license. *See* ECF 6-2 at 28–37; *see also* ECF 6-1 at 42–60, Griffin (describing transaction records).

Regert testified that she and Griffin "pleaded with [Creager] to bring in some form of records" so the "inventory reconciliation" could be conducted.   ECF 6-1 at 29–30, Regert. According to Regert, Creager claimed that "he did have some form of records at his residence on the computer," but he stated that he was "not able to manipulate the system in some way to get a printout." *Id.* at 30.  Creager also told Regert that he was "not able to bring the computer in." *Id.* Regert testified that she and Griffin "tried to tell [Creager] any printout, whether it be incomplete, was still better than no record at all." *Id.* at 30.  But, Creager never brought in anything from home. *Id.*  Indeed, Regert never saw either an electronic or hard copy of Creager's records. *Id.*

Griffin explained that "anytime a licensee experiences a theft . . . [the ATF is] usually assigned to go out and do an inventory verification . . . to ensure that all the firearms are properly reported . . . and provide any further assistance" that the licensee may need.  ECF 6-1 at 34, Griffin.  He testified that when he first visited Creager's business, "[t]here were no A & D records on site . . . ." *Id.* at 36.  Griffin also stated that his supervisor "changed the scope of the inspection from the theft inspection to a full compliance inspection for both [of Creager's] licenses."  ECF 6-1 at 36–37, Griffin.

Like Regert, Griffin testified that he "pleaded with Mr. Creager to either print out the records so that [they] could continue the inspection" or "bring[] the computer in . . . ."  ECF 6-1 at 63, Griffin.  Griffin also "offered to come to [Creager's] residence[.]" *Id.*  But, Creager rejected all of these options. *Id.*

According to Griffin, based on Creager's National Firearm Registration and Transfer Record (ECF 6-1 at 42), Creager used his manufacturer's license for 75 acquisitions and 36 dispositions after August 10, 2011, without maintaining the required records.  ECF 6-1 at 41,

Griffin.   Additionally, Creager used his dealer's license for "more than 1700 acquisitions and more than 1700 dispositions from December 31st, 2009 through February 8th, 2013."   *Id.* at 62; *see also* ECF 6-2 at 87–92 (ATF Hearing exhibit "G-33," a "Findings Page," which lists 1,725 acquisition record errors and 1,772 disposition record errors).   None of these transactions had been recorded in Creager's A & D book at the outset of the 2013 inspection.   ECF 6-1 at 41, 62.

The records for Creager's manufacturer's license were updated by February 8, 2013. ECF 6-1 at 38.   However, Creager's dealer's license records were not updated until March 29, 2013.   ECF 6-1 at 64.   As to the dealer's license records, Griffin told Creager he would "return in a week to give him a chance to update the records."   *Id.*   When Griffin returned a week later, "there was [sic] no additional entries added to the book."   *Id.*   Griffin also stated that ATF personnel never saw a record that Creager kept at his residence.   *Id.* at 65.   Nor did Creager have a "variance from ATF that would allow him to keep records at his personal residence" (*id.* at 66), or a variance to use computerized records.   *Id.* at 79–80.   At the Hearing, Creager was asked whether he let Griffin see his computer and whether he brought his computer to the licensed premises.   ECF 6-1 at 95.   Creager answered, "No."   *Id.*

During Creager's cross-examination of Griffin, Creager stated: "Now, when you met at the business on February 5th . . . I said, you know, this is what I have here, the rest of it's on the computer, you say computer records are not acceptable."   ECF 6-1 at 74.   Griffin replied: "That's not true."   *Id.*   But, Creager acknowledged that at that time he could not provide a printout "right then and there . . . ."   *Id.*   However, Creager stated that during "several" meetings with Griffin, he showed Griffin "the printout that [he] was updating the A & D book then."   *Id.* at 78.   Griffin replied: "I don't recall a printout."   *Id.* at 78.   Creager also stated that after February 8, 2013, he was "updating the A & D books and showing . . . progress" to Griffin.   ECF 6-1 at 77.   Griffin

responded, *id.* at 78: "Well, we generally don't allow people 3 months to update their records. . . . [I]t shouldn't take 3 months to update you're A & D records."

Gary Bangs, Director of Industry Operations for the ATF's Baltimore Field Office,[5] asked Creager to "explain why [he was] so far behind on the records[.]" ECF 6-1 at 84. Creager responded, *id.*:

> I was under the misunderstanding that computer records were acceptable, and I didn't know you had to have a variance. If I had known that, I would never even [have] fooled with a computer. Because I know, especially, on my manufacturer's license I had the computer records, and that day I couldn't print them out at that time. But I made every effort, and I printed everything. I had all the records that I was required to have.

Creager also submitted a complete version of the A & D book for his manufacturer's license, which the ATF submitted in part as well. ECF 6-1 at 85 (detailing Creager's submission). *See generally* ECF 6-3 (Creager's A & D Book).

On cross-examination of Creager by counsel for the government, Creager conceded that he made the last entry in his handwritten book for his manufacturer's license on August 10, 2011. ECF 6-1 at 88–89, 93. Moreover, he acknowledged that he understood the requirements to enter an acquisition and a disposition in the A & D Book within the required time. *Id.* at 90. However, Creager insisted that he "was keeping [his records] on the computer." *Id.* at 91.

Notably, Creager did not dispute that his A & D Book was incomplete when the 2013 inspection began. ECF 6-1 at 87, 89, 91. Indeed, he conceded that the A & D Book "wasn't there when [Griffin] started" the inspection and that he, Creager, "had to get the computer records out" and "write them in." *Id.* at 87. Moreover, Creager did not submit printouts of electronic records that he insists he used to update the A & D Book. *Id.* at 89.

---

[5] Bangs participated in the Hearing as an "observer" (ECF 6-1 at 8), and posed the question to Creager in the context of "Further Redirect Examination," before Creager was called as a witness on his own behalf. ECF 6-1 at 82–84.

In his closing argument, Creager stated, in part: "After the inspection started, I went through - - I had a lot of problems.  The computer system, I found out it was not acceptable, it was very disheartening.  I guess I didn't read that you had to have a variance. . . . And I'm sorry."  ECF 6-1 at 100.

On March 23, 2015, Nicholas E. O'Leary, as Acting Director, Industry Operations, Baltimore Field Division, issued a Final Notice of Denial of Application, Revocation, Suspension and/or Fine of Firearms License.  ECF 6-5, "Revocation Notice."  Creager was served with the Revocation Notice on March 25, 2015.  *See* ECF 6-6 at 3 (providing Fed-Ex delivery confirmation for March 25, 2015); *see also* ECF 6-5 at 3 (providing the ATF's "Date Notice Served" as March 24, 2015).

The Revocation Notice contained "Findings and Conclusions," as well as Findings of Fact and Conclusions of Law.  ECF 6-5 at 4–6.  It stated, in part, (ECF 6-5 at 6) (alteration added):

> 15. Pursuant to the GCA, a Federal firearms license may be revoked if the licensee has willfully violated any provisions of Title 18, United States Code, chapter 44, or the regulations issued thereunder.  18 U.S.C. § 923(e).

> 16. For purposes of the regulatory provisions of the GCA, a "willful" violation is established by showing "the acts were committed in deliberate disregard of, or with plain indifference toward, either known legal obligations or the general unlawfulness of the actions." *RSM, Inc. v. Herbert*, 466 F.3d 316, 321-22 (4th Cir. 2006) . . . .

> 17. By his own admission, Licensee [Creager] knew of the requirement to keep and maintain an A & D Book.  Licensee kept such records on one firearms license or another for approximately twenty years.

> 18. I therefore find and conclude that the record in this matter establishes that Licensee willfully violated the GCA by discontinuing use of his A & D book.

> 19. Accordingly, as provided by 18 U.S.C. § 923(e), Federal firearms license number 8-52-021-07-5K-00085 is hereby REVOKED.

The Revocation Notice also notified Creager of his right, "within 60 days after receipt of this notice," to file a petition pursuant to 18 U.S.C. § 923(f)(3), "for judicial review with the U.S. District Court . . . ." ECF 6-5 at 2. And, the Notice stated that if Creager intended to seek judicial review, he must request a stay of the license revocation from the ATF, and that he would not be permitted to "continue licensed operations unless and until a stay is granted . . . ." *Id.*

By letter dated May 15, 2015, O'Leary informed Creager "that a stay had . . . been granted through May 26, 2015." ECF 6-8 at 2; *see also* ECF 6-7 (Creager's stay request dated April 6, 2015). Then, "[o]n or about June 8, 2015, ATF received from Mr. Creager another request for a stay of the effective date of revocation pending judicial review." ECF 6-8 at 2. That request was granted on June 25, 2015, "solely to enable Mr. Creager to dispose of his inventory of firearms in accordance with the laws and regulations applicable to Federal firearms manufacturers. . . ." *Id.* This suit followed on May 27, 2015.

### IV. Standard of Review

The Gun Control Act, 18 U.S.C. § 921 *et seq*. (the "Act" or "GCA"), grants the Attorney General authorization to license firearms manufacturers, dealers, and importers. 18 U.S.C. § 923(a). Within this authority, the "Attorney General may, after notice and opportunity for hearing, revoke any license issued . . . if the holder of such license has willfully violated any provision of [the Act] or any rule or regulation prescribed by the Attorney General" under the Act. 18 U.S.C. § 923(e); *see also Am. Arms Int'l v. Herbert*, 563 F.3d 78, 82 (4th Cir. 2009). This authority has been delegated to the ATF. *See* 28 C.F.R. § 0.130. And, "[w]henever the [ATF] Director has reason to believe that a licensee has willfully violated any provision of the [Act] . . . a notice of revocation of the license . . . may be issued." 27 C.F.R. § 478.73(a).

The GCA also entitles licensees subject to an ATF license revocation to seek *de novo* review of the action in federal court.   18 U.S.C. § 923(f)(3) ("The aggrieved party may . . . within sixty days . . . file a petition with the United States district court . . . for a de novo judicial review of such denial or revocation.").   On review, the court must make its own independent determination as to whether the agency's decision was correct.   *Cf.  Johnson v. Am. United Life Ins. Co.*, 716 F.3d 813, 819 (4th Cir. 2013).   In conducting this review, "the court may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the [administrative] hearing . . . ."   *Id.*   And, "[i]f the court decides that the Attorney General was not authorized to deny the application or to revoke the license, the court shall order the Attorney General to take such action as may be necessary to comply with the judgment of the court."   *Id.*; *see also Sudyam v. U.S. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 847 F. Supp. 2d 146, 156 (D. Me. 2012) ("In general, although the law provides for a *de novo* review, the [GCA] makes it clear that the focus of that review is narrow: whether the Attorney General was 'authorized' to revoke the license.") (citing 18 U.S.C. § 923(f)(3)) (alteration added).

As the Fourth Circuit has noted, in conducting *de novo* review of agency action under 18 U.S.C. § 923, "an administrative record is a duly authenticated record that enjoys a presumption of verity." *Am. Arms Int'l*, 563 F.3d at 86 n.12.   "In an appeal of agency action, '[t]hat record, unless somehow contradicted, satisfie[s] the [agency's] initial burden of demonstrating the absence of any genuine issue of [material] fact.'  Of course, a district court can consider evidence submitted by the parties outside the administrative record in determining whether summary judgment is appropriate." *Id.* (citations omitted and alterations in original).

Here, both sides filed motions that are styled as motions to dismiss under Fed. R. Civ. P.

12(b)(6) or, in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 56. *See* ECF 7 at 1; ECF 11. To defeat a motion under Rule 12(b)(6), a complaint "must plead facts sufficient to show that [the] claim has substantive plausibility." *Johnson v. City of Shelby, Miss.*, ___ U.S. ___, 135 S. Ct. 346, 347 (2014); *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . .") (citation omitted); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Epps v. JP Morgan Chase Bank, N.A.*, 675 F.3d 315, 320 (4th Cir. 2012); *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that "'the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citation omitted).

Ordinarily, a court "is not to consider matters outside the pleadings . . . when ruling on a motion to dismiss" under Rule 12(b)(6). *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007); *see Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013). But, a motion such as those here, styled in the alternative, implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure to consider documents outside the pleadings. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37, (D. Md. 2011), *aff'd*, 684 F.3d 462 (4th Cir. 2012). If the court does so, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. In that circumstance, the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2015 Supp.) ("WRIGHT & MILLER"). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165, 167.[6]

In my view, it is appropriate to consider the motions as ones for summary judgment, because this will facilitate disposition of this case. The "*de novo* standard prescribed by § 923(f)(3) [of the GCA] does not vitiate the standard otherwise applicable to motions for summary judgment . . . ." *Mew Sporting Goods, LLC v. Johansen*, 992 F. Supp. 2d 665, 677 (N. D. W. Va. 2014) (alteration added).

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A federal court reviewing such a [firearms license] revocation may grant summary judgment 'if no genuine issue of material fact exists about

---

[6] Even if the court were to construe a motion under Rule 12(b)(6), the court may consider materials that are "integral to the complaint and authentic." *U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (quoting *Philips v. Pitt Cty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted and emphasis in original).

whether [the licensee] willfully violated an applicable statutory or regulatory provision.'" *Am. Arms Int'l*, 563 F.3d at 82 (citing *Armalite, Inc. v. Lambert*, 544 F.3d 644, 647 (6th Cir. 2008)). (First alteration added; second alteration in original).

To obtain summary judgment, the non-moving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith, Radio Corp.*, 475 U.S. 574, 586 (1986). The Supreme Court has clarified that not every factual dispute will defeat a summary judgment motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. There is a genuine dispute as to material fact "if the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party." *Id.*; *see also Libertarian Party of Va. v. Judd,* 718 F.3d 308, 313 (4th Cir. 2013); *Dulaney v. Packaging Corp. of Am.,* 673 F.3d 323, 330 (4th Cir. 2012).

In the context of summary judgment, the court does not sit as the trier of fact. The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249. Moreover, on summary judgment the trial court may not make credibility determinations. *Jacobs v. N.C. Admin. Office of the Courts,* 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French,* 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States,* 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 644–45 (4th Cir. 2002). Indeed, in the face of conflicting evidence, such as competing affidavits,

summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility.[7]

When, as here, the parties have filed cross-motions for summary judgment, the court must consider "each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (citation omitted), *cert. denied*, 540 U.S. 822 (2003); *see Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003). "Both motions must be denied if the court finds that there is a genuine issue of material fact. But if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment." 10A WRIGHT & MILLER, § 2720, at 336–37 (3d ed. 1998, 2015 Supp.).

## V. Discussion

### A.

ATF argues that petitioner's Complaint was untimely filed. ECF 7-1 at 5. Creager has not addressed this issue. *See* ECF 11.

---

[7] Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 448 (4th Cir. 2011). *See Nader v. Blair,* 549 F.3d 953, 961 (4th Cir. 2008) ("Generally, a district court must refuse summary judgment 'where the nonmoving party has not had the opportunity to discover information that is essential to [its] opposition.'") (*quoting Anderson,* 477 U.S. at 250 n.5). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names,* 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Tech. Applications & Serv. Co.,* 80 F.3d 954, 961 (4th Cir. 1996)). No such request was made here.

Moreover, this case arises from an administrative proceeding. As a result, there is a detailed administrative record. *See Newsom v. Barnhart*, 116 F. App'x 429, 432 (4th Cir. 2004) (affirming district court's denial of discovery request, "[g]iven the breadth of the administrative record"); *Khoury v. Meserve*, 268 F. Supp. 2d 600, 612 (D. Md. 2003) (determining that summary judgment was not premature because a "full and detailed factual record" had already been created); *see also Volochayev v. Sebelius*, 513 F. App'x 348, 351–52 (4th Cir. 2013).

Under 18 U.S.C. § 923(f)(3), after a firearms license has been revoked, an "aggrieved party may . . . within sixty days after the date notice was given . . . file a petition with the United States district court . . . for a de novo judicial review . . . ."  On March 25, 2015, Creager received Notice of the revocation of his manufacturer's license.  ECF 6-6 at 3 (including the Fed-Ex delivery confirmation).  Although it appears that Creager signed his Complaint on May 22, 2015 (ECF 1 at 3; ECF 1-1 at 1), he did not file it until Wednesday, May 27, 2015 (ECF 1), 62 days "after the date notice was given . . . ."  18 U.S.C. § 923(f)(3).  The Court was closed on Memorial Day, Monday, May 25, 2015.  As a result, Creager had an additional day, until May 26, 2015, to file his petition.  *See* Fed. R. Civ. P. 6(a)(1)(C).  But, as noted, the suit was not filed until May 27, 2015.  Thus, the suit was untimely filed.

Creager has not asserted an argument suggesting that his belated filing is subject to equitable tolling.  *Cf. United States v. Kwai Fun Wong*, ___ U.S. ___, 135 S. Ct. 1625 (2015) (holding that the limitations set forth in 28 U.S.C. § 2401(b) are not jurisdictional and are subject to equitable tolling).  Accordingly, the Petition is time-barred.

**B.**

Alternatively, even if the suit were timely filed, I would uphold the decision of the ATF.

As noted, the GCA demands that the Court adjust the Attorney General's decision if, in conducting *de novo* review, "the court decides that the Attorney General *was not authorized* . . . to revoke the license[.]"  18 U.S.C. § 923(f)(3) (emphasis added).  The ATF has been delegated the authority to oversee license revocations.  28 C.F.R. § 0.130.  The Court must determine whether ATF personnel had "reason to believe that a licensee has *willfully violated* any provision" of the GCA.  27 C.F.R. § 478.73(a) (emphasis added).

- 20 -

The Fourth Circuit has provided useful guidance on what constitutes a "willful violation" under the GCA.  In *RSM, Inc. v. Herbert*, 466 F.3d 316 (4th Cir. 2006), the ATF revoked the license of a firearms dealer because, "after an extended opportunity to place [its] operations in compliance with the Gun Control Act, [the dealer] committed over 900 willful violations" of the Act.  *Id.* at 317 (quotations omitted and first alteration in original).

In *RSM*, the dealer had undergone four ATF inspections that revealed an increasing number of record-keeping violations, including, *inter alia*, numerous incomplete or outdated A & D Book entries.  *Id.* at 317–19.  The firearms dealer argued that the "violations resulted from inadvertent, technical record-keeping error[s] and therefore were not willful as required for a license revocation" under the GCA.  *Id.* at 317 (quotations omitted and alteration in original).

On review, the district court disagreed and ruled in favor of the ATF.  The court explained: "The undisputed evidence, including [the dealer's] own testimony, conclusively establishes that [the dealer] was well aware of the regulations imposed on federal firearms dealers and yet, despite that knowledge, continued to violate those same regulations. Thus, [the dealer's] conduct clearly meets the definition of willful."  *Id.* (alterations adjusted).

The Fourth Circuit affirmed.  Of import here, it said, *id.* at 321–22 (emphasis in original):

[W]hen determining the willfulness of conduct, we must determine whether the acts were committed in deliberate disregard of, or with plain indifference toward, either known legal obligations or the general unlawfulness of the actions. But when applying such a formulation of willfulness to an omission—the *failure* to act—there is seldom direct evidence that a person intentionally failed to do something that was legally required. Thus, when evaluating omissions alleged to be deliberate, it is often necessary to ascertain whether the failure to act resulted from a conscious consideration of the legal requirement to act. While evidence of willfulness in this context may be more elusive than in the context of affirmative actions, a court may infer willful omission from a defendant's plain indifference to a legal requirement to act if the defendant (1) knew of the requirement *or* (2) knew generally that his failure to act would be unlawful.

The Fourth Circuit reached a similar outcome in *American Arms Int'l v. Herbert*, 563 F.3d 78, a case in which the ATF denied and revoked firearms licenses held by the owner of two firearms businesses.  The ATF took these actions after an inspection of the owner's existing operations revealed "thousands of record-keeping and other violations" (*id.* at 79), including "a number of discrepancies in A & D Records . . . ." *Id.* at 80.  The business owner requested an ATF hearing regarding the denied firearms license application.  Unsatisfied with the result, he sought judicial review under the GCA.  *Id.* at 81.

The business owner argued that his record-keeping violations were "clerical in nature." *Id.* (quotations omitted).  Additionally, "while not specifically denying any of the violations [aside from one unrelated point] . . . he proceeded to explain the circumstances surrounding each violation: how he remedied (or attempted to remedy) the violation, how he had arranged alternative procedures for accomplishing the purpose of the given violated regulation, or how he had been unaware of the unlawful nature of his actions at the time." *Id.* (first alteration added). The district court was unpersuaded and granted the ATF's motion for summary judgment.  *Id.*

On appeal, the petitioner insisted that "'willfulness' does not extend to 'inadvertent errors or technical mistakes.'" *Id.* at 85.  The Fourth Circuit affirmed. *Id.* at 79.  It explained why the petitioner's actions fell within the meaning of "willful violation" under the GCA.  *Id.* at 83–84

(analyzing *RSM*, 466 F.3d 316, and *Prino v. Simon*, 606 F.2d 449 (4th Cir. 1979) (per curiam)). The Court said: "At some point . . . a repeated failure to comply with known regulations can move a licensee's conduct from inadvertent neglect into reckless or deliberate disregard (and thus willfulness) . . . ." *Am. Arms Int'l*, 563 F.3d at 85.  The Court also recognized that "a single uncontested violation suffices to uphold the ATF's . . . decision." *Id.* at 86.

Additionally, of the more than 400 A & D Book entries that the petitioner mishandled in *American Arms*, he argued that "275 of those were recorded elsewhere or 'merely late.'" *Id.* at 86.  "He further claim[ed] that because he had [then] reported the remaining 146 firearms as lost or stolen, he [did] not need to record them in the A & D Records." *Id.* (alterations added).  The Fourth Circuit regarded "[t]hese post-hoc explanations" as "unavailing" (*id.*), and stated: "Plain indifference can be found even where nine times out of ten a licensee acts in accordance with the regulations, if he was plainly indifferent to the one-in-ten violation." *Id.* at 87.  The Court of Appeals also noted that the petitioner "displayed a lack of concern for the regulations that clearly meets the standard of willfulness." *Id.*  In sum, the Court upheld the ATF, reasoning that even though the "standard of willfulness . . . does not demand perfection from licensees [and] it leaves room for the occasional incident of human error" (*id.* at 87), the petitioner's errors exceeded this threshold.

In this case, the evidence showed that Creager was aware of and understood his reporting obligations.  Yet, he failed to keep adequate records for a substantial period of time, despite having previously complied with ATF regulations for more than a decade.  ECF 6-1 at 28.

Creager seems to suggest that errors with regard to his dealer's license are of no significance, because he voluntarily surrendered that license in May 2013.  Notably, Creager surrendered that license only *after* the ATF inspection revealed countless errors as to his

recordkeeping.  His decision to surrender the dealer's license, apparently in an effort to salvage his manufacturer's license, did not require the ATF to ignore the violations in analyzing and assessing the errors as to the manufacturer's license.  Indeed, he cannot recast the facts by attempting to remove from consideration a glaring series of acts and omissions that violated his reporting obligations.

During the relevant time, Creager used his manufacturer's license for 75 firearm acquisitions and 36 firearm dispositions.  ECF 6-1 at 41.  This does not include the "more than 1700 acquisitions and more than 1700 dispositions" that were unrecorded under Creager's dealer's license.  ECF 6-1 at 62.  Although Creager claims that he was "under the misunderstanding that computer records were acceptable" and that he "didn't know [he] had to have a variance" to use a computer, he did not make his computer records available to the ATF inspectors, despite their repeated requests.  Indeed, Creager does not contest that ATF personnel "pleaded with him to bring in some form of records" (ECF 6-1 at 29–30), and that he failed to provide access to the electronic files he allegedly maintained.  *See, e.g.*, ECF 6-1 at 63.

The Fourth Circuit has made clear that when a petitioner "(1) knew of the requirement *or* (2) knew generally that his failure to act would be unlawful" under the GCA (*RSM*, 466 F.3d at 321–22), a violation is deemed willful.  This applies even when a petitioner claims that he was "unaware of the unlawful nature of [his] actions" (*Am. Arms Int'l*, 563 F.3d at 81 (alterations added)), or if firearms transactions were "recorded elsewhere" (*id.* at 86), or were "merely late" (*RSM*, 466 F.3d at 317), or were "inadvertent, technical record-keeping error[s]."  *Id.*; *see also Armalite*, 544 F.3d at 650 (finding that six record-keeping violations were "not a mere processing error, but a reckless disregard for known legal obligations") (alterations and quotations omitted).

Creager's violations of the GCA were willful:  he failed to keep required records for more than a year (ECF 6-1 at 41), and in that time conducted more than 100 transactions under his manufacturer's license.  *Id.*  Yet, he understood his obligations under the law to maintain the A & D Book, as he had done historically.  ECF 6-1 at 90.  Although Creager was not granted multiple warnings or citations like those granted to the petitioners in *RSM* and *American Arms*, the GCA does not require such flexibility.  *Am. Arms Int'l*, 563 F.3d at 86.   Furthermore, in his petition for *de novo* review, Creager has offered no justification for his conduct, apart from a claim that the conduct as to the dealer's license is not relevant, and an assertion that he kept the records on his computer – an assertion that he did not demonstrate to ATF.  ECF 1, Complaint.

Simply put, petitioner has provided no factual allegations and advanced no argument to suggest he did not willfully violate the GCA.  Given that "a single uncontested violation suffices to uphold [an] ATF[] revocation decision," *Am. Arms Int'l*, 563 F.3d at 86, I am satisfied that the ATF acted within its authority, as a matter of law, when it revoked petitioner's firearms manufacturer's license.   Accordingly, I shall grant the Defense Motion.

As noted, the parties have filed cross-motions for summary judgment, and so the court must consider "each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'"  *Rossignol*, 316 F.3d at 523 (citations omitted); *see also Mellen*, 327 F.3d at 363.  And, as noted, "[b]oth motions must be denied if the court finds that there is a genuine issue of material fact."  10A WRIGHT & MILLER, § 2720, at 336–37.  However, "if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment."  *Id.*

I am persuaded that Petitioner's Motion must be denied for the same reason that respondent's must be granted.  As discussed in detail above, petitioner has failed to advance any

basis to support his motion.  He has not shown that there is a "genuine issue of material fact" as to the ATF's decision to revoke his firearms manufacturer's license.  *See* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."); *see also Celotex Corp.*, 477 U.S. at 323.  Accordingly, I will deny Petitioner's Motion.  ECF 11.

## VI. Conclusion

For the foregoing reasons, I shall GRANT the Defense Motion (ECF 7) and deny Petitioner's Motion. ECF 11. An Order follows, consistent with this Memorandum Opinion.


Date: March 18, 2016                                      _____/s/_____

Ellen L. Hollander
United States District Judge